IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| A. C. FURNITURE, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 4:14-cv-00029 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ARBY'S RESTAURANT GROUP, INC., ) | By: Hon. Jackson L. Kiser |
| ) | Senior United States District Judge |
| Defendant. ) | |

Plaintiff A.C. Furniture, Inc. ("Plaintiff" or "ACF") filed suit against Defendant Arby's Restaurant Group, Inc. ("Defendant" or "ARG") on April 17, 2014, in the Circuit Court of Pittsylvania County. (See Compl. [ECF No. 1-1].) On June 9, 2014, Defendant Arby's Restaurant Group, Inc. ("Defendant" or "ARG"), removed the action to this Court. (See Not. of Removal, June 9, 2014 [ECF No. 1].) Thereafter, on July 3, 2014, Defendant filed a Motion to Dismiss the Complaint for Failure to State a Claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. to Dismiss, July 3, 2014 [ECF No. 16].) Plaintiff responded (see Pl.'s Br. in Resp. to Def.'s Mot. to Dismiss, July 24, 2014 [ECF No. 19]), and the parties appeared before me on September 23, 2014, to argue their respective positions. Having considered their arguments, briefs, and all relevant parts of the record, the matter is now ripe for disposition. For the reasons stated herein, Defendant's Motion to Dismiss will be denied.

## I.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

A.C. Furniture, Inc., is a Virginia corporation headquartered in Axton, Virginia. (Compl. ¶ 1.) ACF manufactures "custom furniture for, among others, restaurant chains and franchise restaurants, including national restaurant chains . . . ." (Id. ¶ 8.) As part of its business model,

---

[1] The facts are taken from Plaintiff's Complaint. As this stage, it is appropriate to accept Plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

ACF receives large orders based on customers' estimated requirements. Because the orders are typically too large for a customer to accept an entire order at one time, ACF warehouses the furniture until the customer may accept parts of the order to satisfy its needs. (See id. ¶¶ 9–12.)

Arby's Restaurant Group, Inc., is a Delaware corporation with its principle place of business in Atlanta, Georgia. (Id. ¶ 2.) ARG owns and operates the national restaurant chain Arby's.

On February 11, 2010, Lauren Fritzer, who held the position of "Buyer, Wendy's Arby's Group" with Defendant, e-mailed Heidi Garcia, Plaintiff's Restaurant Market Manager, regarding a remodel to 100 Arby's stores. (See id. Ex. B.) Plaintiff contends that this e-mail constituted an order for 4,500 specially designed chairs for the Arby's restaurants (4,500 chairs / 100 stores = 45 chairs/store). The e-mail included information regarding the type of chairs to be used (model numbers), the finishes on the chairs (silver or mocha), and the types of seat pads to be used in each store (bronze, tomato, or American Beauty). (Id.) Plaintiff understood Arby's needs to be for approximately 45 chairs per restaurant, and contends that Fritzer's e-mail was an order for 4,500 chairs. (See id. ¶¶ 15–17.) Thereafter, Plaintiff manufactured the chairs to Arby's "discrete and detailed specifications." (Id. ¶ 15.)

In 2011, Defendant represented to Mark Hawks, Plaintiff's sales representative in Atlanta, that it needed an additional 3,300 custom-made Model 1695 and 1675 chairs for seventy-four (74) Arby's restaurants (3,300 chairs / 74 stores = 45 chairs/store). (See id. ¶ 18.) "When Mr. Hawks finalized the 2011 contract for the purchase of these chairs with ARG, he forwarded the terms, including the agreed price and ARG's estimated requirement in numbers and types of chairs for 2011, to Heidi Garcia, who took the order to ACF's purchasing

department to procure the chairs ordered by ARG."  (Id. ¶ 19; see id. Ex. C.)  ACF procured the 3,300 chairs ordered through Mark Hawks by ARG.  (Id. ¶ 20.)

Despite ordering a total of 7,830 chairs during 2010 and 2011, ARG only accepted shipment of and paid for 1,117 chairs.  (Id. ¶ 21.)  The remaining 6,653 chairs remain in ACF's warehouse.  (Id.)  The outstanding balance of $292,732.00, representing a price of $44/chair, has not been paid.  (Id.; see also id. Ex. A.)  Although ACF manufactured more chairs than Arby's ordered (in case Defendant had not adequately projected its needs), ACF is not requesting payment for the additional 670 chairs it manufactured in excess of Arby's total orders.  (See id. ¶ 20 & n.1.)

On April 17, 2014, ACF filed suit against ARG in the Circuit Court for Pittsylvania County.  (See Compl.)  Plaintiff alleges that Defendant breached the contracts between the parties when it failed to pay for the balance of its order.  (Compl. ¶¶ 22–24.)  Alternatively, in the event that the contracts between ACF and ARG violate the Virginia statute of frauds, Plaintiff contends that the chairs ordered by Arby's were "specially manufactured goods" and that ARG is liable for the cost of the chairs even in the absence of an written contract.  (Compl. ¶¶ 25–29.)  Finally, Plaintiff makes the second alternative claim that the agreement between ACF and ARG constituted a "requirements contract," such that the lack of a definite quantity in the contract will not defeat the otherwise enforceable agreement between the parties.  (Compl. ¶¶ 30–36.)

Defendant removed the action to this court on June 9, 2014 [ECF No. 1], and the parties jointly requested to extend Defendant's time to file a responsive pleading until July 3, 2014 [ECF No. 6].  On that date, Defendant filed a motion to dismiss arguing that: (1) there was no agreement between the parties, and thus no contract; (2) Plaintiff has not pleaded with specificity

that the chairs qualify as "specially manufactured," to wit, that the chairs are so unique they cannot be sold to other customers in the regular course of Plaintiff's business; and (3) the alleged "requirements contract" violates the statute of frauds. (See Def.'s Br. in Supp. of its Mot. to Dismiss [ECF No. 16] (hereinafter "Def.'s Br.").) Plaintiff responded on July 24, 2014. (See Pl.'s Br. in Resp. to Def.'s Mot. to Dismiss [ECF No. 19] (hereinafter "Pl.'s Br.").) Defendant filed a reply on August 4, 2014. (See Def.'s Reply Br. in Supp. of Def.'s Mot. to Dismiss [ECF No. 20] (hereinafter "Def.'s Reply").)

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. Id. The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## III.   DISCUSSION

Under Virginia's version of the Uniform Commercial Code ("UCC"), a contract for the sale of goods valued at over $500.00 is generally not enforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."  Va. Code Ann. § 8.2-201(1) (2014).  This provision is known as the "statute of frauds."  "The purpose of the statute of frauds is to prevent the assertion of contracts based solely on verbal understandings, in order to limit the opportunity that the legal system would be misused by fraud or perjury. The statute of frauds is not a rule of evidence and is not involved in making the determination of whether or not an oral agreement was in fact made. It simply makes unenforceable those contracts that do not have the support of some signed writing."  Rapoca Energy Co., L.P., v. AMCI Export Corp., Case No. 1:00-cv-00162, 2001 WL 401424, at *4 (W.D. Va. Apr. 17, 2001).

A written contract "need not contain all the material terms of the contract[,] and such material terms as are stated need not be precisely stated.  All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction. . . . The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated.  The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted."  Va. Code Ann. § 8.2-201, cmt. 1.

A contract which does not satisfy the statute of frauds "but which is valid in other respects is enforceable if the goods are to be specially manufactured for the buyer and are not

- 4 -

suitable for sale to others in the ordinary course of the seller's business . . . ."[2] Id. § 8.2-201(3)(a). This exception to the statute of frauds permits the enforcement of an unwritten but otherwise valid agreement, or a written but deficient agreement, so long as the essential elements of a contract are present (such as a meeting of the minds and reasonable certainty regarding the terms of the agreement).

There are three separate theories under which Plaintiff is proceeding. The first, Count I, is that the 2010 e-mail represented a contract between the parties. Defendant does not agree and asserts that there was no signed writing, and thus no enforceable contract under the statute of frauds. I am not persuaded that Plaintiff has failed to allege a signed writing sufficient to satisfy the statute of frauds. All Virginia law requires is that the writing be signed, "a word which includes any authentication which identifies the party to be charged . . . ." Va. Code Ann. § 8.2-201, cmt. 1. Courts have held that e-mails are sufficient to satisfy this requirement. See, e.g., Duke Energy Indus. Sales, LLC v. Massey Coal Co., Inc., Case No. 5:11-cv-00092, 2012 WL 2930772, at *9 (S.D.W. Va. July 18, 2012); see also Va. Code Ann. § 59.1-485(b)−(c) ("A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation. If a law requires a record to be in writing, an electronic record satisfies the law. If a law [or contract] requires a signature . . . an electronic signature satisfies the law."). But see Gitter v. Cardiac & Thoracic Surgical Assocs., Inc., 338 F. App'x 348, 349 (4th Cir. 2009) (holding that various e-mail communications between the parties "did not constitute a signed writing sufficient to satisfy the Statute of Frauds."). Here, the e-mail was clearly written and was sent from an address associated only with one person—Defendant's buyer. It included her e-

---

[2] The other requirement of this exception to the statute of frauds—that the seller "has made either a substantial beginning of their manufacture or commitments for their procurement," Va. Code Ann. § 8.2-201(3)(a)—is not at issue in this case. The parties agree that A.C. Furniture has manufactured the chairs at issue; they currently sit unclaimed in Plaintiff's warehouse.

mail signature with her name and title. Thus, Plaintiff has alleged the existence of a signed writing. Moreover, in its reply brief, Defendant conceded that an e-mail is a signed writing under Virginia law. (See Def.'s Reply pg. 2̶3 ("While it may be true that an e-signature is sufficient to create a signed writing under Virginia law . . . .").) Therefore, Defendant's objection to the allegations do not warrant dismissal of the Complaint.

Defendant next contends that, because there was no precise quantity alleged in the 2010 e-mail, the e-mail cannot constitute a contract under Virginia law because "[t]he only term which must appear [in a contract] is the quantity term . . . ." See Va. Code Ann. § 8.2-201, cmt. 1. This argument is also unpersuasive. The Complaint clearly alleges that "ARG provided Ms. Garcia with its estimated requirement of 4,500 chairs ARG would need for 2010 . . . ." (Compl. ¶ 17.) Although that number does not appear in the body of the e-mail, the number of stores does. When those two pieces of information are coupled together, it establishes (for pleading purposes) that one store was equivalent to 45 chairs. In other words, "one store" is synonymous with "45 chairs." On that allegation, *a* quantity term *did* appear in the e-mail (although it was not the quantity term Defendant insists should have been there). See Va. Code Ann. § 8.2-201, cmt. 1 ("[T]he quantity term . . . need not be accurately stated . . . .").

Defendant also argues that the 2010 e-mail could not constitute a contract because there was no "meeting of the minds" or an "intention to be bound." When reviewing Plaintiff's allegations, the standard is not whether there *was* a meeting of the minds; on a motion to dismiss, the standard is whether Plaintiff has *alleged* that there was a meeting of the minds. In the Complaint, Plaintiff clearly alleges that Defendant's agent, Lauren Fritzer, "confirmed an order on Arby's behalf . . . ." (Compl. ¶ 15.) This is a clear allegation of an intention to be bound. Likewise, the language of the 2010 e-mail supports the conclusion that there was an intention to

be bound on Defendant's part. In the e-mail, Ms. Fritzer stated that the scheme would "*require* the Mocha finish on the chair[s]," and that they had "*decided* to use only chairs and no barstools." (Compl. Ex. B (emphasis added).) On a motion to dismiss, quoting such language does plausibly allege an intention to be bound. Whether or not there actually was an intention manifested in that e-mail is a question for the jury. On the facts as presented, Plaintiff has alleged a meeting on the minds with regard to the 2010 order.

Moreover, Plaintiff has pleaded a meeting of the minds by alleging that Defendant accepted and paid for over 1,100 chairs. The Virginia Code states that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Va. Code. Ann. § 8.2-204(1). The commentary to the Virginia Code makes clear that an intention to be bound may be inferred based on a party's actions. See Va. Code Ann. § 8.2-201, cmt. 2 ("Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists."); see also id. § 8.2-201(3)(c) ("A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable with respect to goods for which payment has been made and accepted or which have been received and accepted."). The remaining question—whether that was the extent of the contract between the parties—is a question of fact for a jury.

Count II sets forth Plaintiff's first alternative theory. In that Count, Plaintiff alleges that, if the 2010 e-mail does not constitute a written contract under the Virginia UCC, the "specially manufactured goods" exception applies.[3] Defendant counters that the allegations relating to this count are insufficient or, more precisely, that Plaintiff has not alleged enough information

---

[3] For a discussion of the applicability of the specially manufactured goods exception to the 2011 order, see infra note 4 (and accompanying text).

- 7 -

regarding the uniqueness of the goods to put this exception into play. The Complaint, however, repeatedly refers to the chairs as "custom," "custom made," "made-to-order," "specially manufactured," and even alleges that the chairs were manufactured "to Arby's discrete and detailed specifications . . . ." (Compl. ¶¶ 7−8, 15, 18, 27.) Such allegations are enough to push its claims into the realm of plausibility.

Defendant counters that Plaintiff's allegations are merely the recitation of the elements of a cause of action. While it may be true that Plaintiff has not alleged an inordinate factual basis for its allegations, it has certainly alleged that the chairs were custom-made and are not suitable for resale to other customers. (See id. ¶ 27.) Plaintiff does not need to prove its case in its pleadings, although Defendant appears to be insisting that it does. (See, e.g., Def.'s Reply Br. in Supp. of Def.'s Mot. to Dismiss, pg. 5, Aug. 4, 2014 [ECF No. 20] ("Plaintiff's *failure to show* mutual assent . . . ." (emphasis added)).)

Defendant's next argument against Count II is that Plaintiff has not alleged with sufficient detail that the goods are not suitable for resale. The Complaint sets forth the nature of Plaintiff's business, illustrating that it sells large furniture orders to franchise and chain restaurants. It also asserts that it cannot sell these Arby's specific chairs to its other customers, all of whom, like Arby's, certainly have a specific design and theme to all of their restaurants. While Plaintiff may not be able to prove the necessary elements of the "specially manufactured goods" exception, Plaintiff does allege its applicability. That is all that is required at this early stage of litigation.

Defendant's reliance on Flowers Baking Co. v. R-P Packaging, Inc., 229 Va. 370, 329 S.E.2d 462 (1985), is misplaced. Flowers Baking Co. concerned the applicability of the "specially manufactured goods" exception *after* a trial on the merits. The case does not discuss

- 8 -

the pleading requirements to state a claim under the exception. Likewise, <u>Delta Star, Inc. v. Michael's Carpet World</u>, 276 Va. 524, 666 S.E.2d 331 (2008), has limited applicability. The facts of that case—goods were ordered off the showroom floor—are vastly different from those alleged in the Complaint. <u>See id.</u> at 527−28, 666 S.E.2d at 333. Here, Plaintiff has alleged that the chairs were not ordered off a showroom floor or from a catalog. Rather, Plaintiff alleged that Defendant selected the individual components for the chairs, including the style, finish, and seat pad color, and that Plaintiff manufacture the chairs to meet those specifications. On those facts, it cannot be said that Plaintiff has not pleaded more than that which the court in <u>Delta Star</u> held was insufficient to fall under the "specially manufactured goods" exception.

The same rationale would apply to the goods allegedly ordered in 2011.[4] Like the chairs contemplated in the 2010 e-mail, Plaintiff has alleged that the chairs were made to Defendant's detailed and unique specifications. Whether or not the parties intended to enter into a contract for the sale of those chairs is a question for a jury. On the facts as pleaded, Plaintiff has stated a claim for breach of contract for the sale of the "specially manufactured" chairs in 2011 as well.

Plaintiff's final theory—that the 2010 contract was a requirements contract—is also adequately pleaded. For a contract to be valid under the Virginia statute of frauds, it is not necessary that every material term appear in the operable writing. "All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction. . . . The only term which must appear is the quantity term[,] which need not be accurately stated but recovery is limited to the amount stated." Va. Code Ann. § 8.2-201, cmt. 1. Virginia law also states that a contract is valid if the contract measures the quantity to be sold "by the output of the

---

[4] The parties are not clear whether the 2010 and 2011 orders are part of the same contract or whether two different contracts for the sale of the chairs was contemplated. In the case of the chairs ordered in 2011, Plaintiff does not allege the existence of a writing, so the "specially manufactured goods" exception is the only alleged theory under which the 2011 order may be excused from the statute of frauds.

- 9 -

seller or the requirements of the buyer . . . ." Id. § 8.2-306(1). Here, Defendant maintains that the alleged orders for chairs for a specified number of stores means the parties did not enter into a valid contract because the quantity term is missing from their agreement. Even assuming, for the sake of argument, that "chairs for 30 stores" is not a quantity term that is permissible, such a contract would qualify as a "requirements contract" under § 8.2-306(1). The quantity of goods to be sold under a requirements contract may not be "unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable output or requirements . . . ." Id. A contract for the sale of chairs for a specified number of stores could qualify as a requirements contract, so long as the output was reasonable. Plaintiff has alleged that Defendant required chairs for 100 stores, and that it provided 45 chairs per store. Whether that is a reasonable output is for a jury to decide, but Plaintiff has adequately pleaded that the 2010 e-mail was a contract obligating Plaintiff to supply as many chairs as Defendant would need to remodel 100 stores.

## IV. CONCLUSION

In its Complaint, Plaintiff alleged that Defendant's buyer sent a signed writing to Plaintiff ordering chairs for 100 stores. Plaintiff alleges that Defendant knew it was entering into an agreement to purchase those chairs from Plaintiff. Moreover, Defendant's actions—as alleged in the Complaint—establish a meeting of the minds for the purposes of a 12(b)(6) review. Likewise, Plaintiff has adequately alleged facts that would implicate the "specially manufactured goods" exception to the statute of frauds. Finally, Plaintiff has alleged that the 2010 e-mail was a requirements contract, obviating the requirement that a specific quantity to be stated in the contract. For these reasons, Defendant's motion to dismiss will be denied.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 3rd day of October, 2014.

                                                    s/Jackson L. Kiser
                                                  SENIOR UNITED STATES DISTRICT JUDGE